he could think of, paid $816 less than the remaining value. The third assignment was dated March 5, 1902, and was identical with the second, being in form an absolute assignment of $2,000 out of the legacy when due. This was also made to Bell, although Black testifies that he was the sole purchaser, paying $1,000 for it. On January 16, 1905, Bell assigned to Black all his interest in the legacy represented by these three assignments.

It is impossible to doubt that all these transactions were similar, and, whatever their form, were nothing less than loans, although two of them are now said to have been sales. This view is confirmed by three releases prepared to be given to the Trust Company and signed by Gimbernat, Black, and Bell. These were prepared by Black, or at his direction, and each one recites that the assignments were given "as security for the payment to him (Bell) by the said Gimbernat of the sums of $5,000, $3,000, and $2,000, respectively." It is conceded that Gimbernat received only $6,057.50 for the assignments of a $10,-000 interest in the legacies. On December 3, 1904, Gimbernat, through his attorney, while asserting that the assignments were void for usury, offered to allow them to the extent of the money he received, with interest and necessary disbursements. This offer was refused.

It seems to us that it is quite impossible to find that these transactions were other than covers for usurious loans. It would serve no useful purpose to review the testimony and point out the reasons which lead to this conclusion. The devices and methods by which it was sought to cover up the real nature of the transactions have been used many times before, and have seldom, if ever, successfully passed the scrutiny of the courts. They have not even the merit of novelty or of plausibility.

It follows that the judgment must be reversed, and a new trial granted, with costs to the appellant against the respondent, Henry M. Black, to abide the event. All concur.

---

(134 App. Div. 386.)

EXETER MACH. WORKS v. WONHAM-MAGOR ENGINEERING WORKS.

(Supreme Court, Appellate Division, First Department. November 5, 1909.)

1. WORK AND LABOR (§ 12*)—RECOVERY ON QUANTUM MERUIT.

If nothing was due a subcontractor under the terms of his contract, because the work was not accepted by the owners, which the contract made a condition precedent to the payment of the price, because of noncompliance with the principal contract, he could not recover on a quantum meruit any more than for breach of the contract, as the written contract, when put in evidence, fixed the rights of the parties.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. § 27; Dec. Dig. § 12.*]

2. CONTRACTS (§ 320*)—PERFORMANCE—IMPOSSIBILITY.

Where a subcontractor, when he made a contract to construct cable drives for the principal contractor, which provided that 25 per cent. of the price should be withheld until acceptance of the work, knew that the drives must have a certain capacity, he could not recover from the contractor any part of the reserved price on the ground that the size of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

engines used made it practically impossible for the owner to accept the drives under its contract with the contractor; the subcontractor, by reason of his knowledge, being as much at fault as the principal contractor.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1493–1527; Dec. Dig. § 320.*]

Appeal from Trial Term, New York County.

Action by the Exeter Machine Works against the Wonham-Magor Engineering Works. From a judgment for plaintiff, and an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, LAUGHLIN, and SCOTT, JJ.

Charles P. Howland, for appellant.
Franklin Nevius, for respondent.

McLAUGHLIN, J. The only question litigated upon the trial was the first cause of action alleged in the complaint, regarding which there is little or no contest between the parties as to the material facts involved. One Smith, as general contractor, was constructing for the United States government a coaling station at Bradford, R. I., and he sublet a part of the work, which included the installing of two cable drives, to the defendant, which, in June, 1902, entered into a written agreement with the plaintiff by which, for $4,730, it agreed to furnish and install the same. The plaintiff installed the drives in November or December, 1903; but after two tests they were rejected by the general contractor and the United States government, and defendant notified plaintiff of that fact. The first cause of action set out in the complaint is to recover $875.02, the balance alleged to be due for such drives. Plaintiff had a verdict for this amount, with interest, plus the amount admitted to be due upon the second cause of action; and from the judgment entered thereon, and an order denying a motion for a new trial, defendant appeals.

The respondent claims that the action is not brought to recover upon the contract, although the making of it is alleged in the complaint, but to recover upon a quantum meruit for the materials furnished and work performed, the value of which is admitted to be the contract price, $4,730. Under the contract, which was put in evidence, 25 per cent. of the purchase price ($1,182.50) did not become due until the drives had been accepted by the general contractor and the United States government. This amount is more than the amount claimed by the plaintiff, and it is alleged as a defense that neither the government nor the contractor has ever accepted the work, which fact was proved upon the trial and in no way controverted by the plaintiff.

Obviously, if there is nothing due under the terms of the contract, the defense is good, whether the form of the action be considered as one for the breach of the contract or upon a quantum meruit. It is contended, however, that acceptance was rendered impossible by acts of the defendant. If this fact had been pleaded and established at the trial, plaintiff would have been entitled to recover, notwithstanding this

condition in the contract.  But the pleadings presented no such issue, nor did the proof establish it.  It is true there was some evidence introduced to the effect that the track and cars installed by the defendant were defective; but it was not shown that the cable drives which furnished the power for moving the cars were rejected on that account. On the contrary, it did appear that they were not accepted because one of them could not do the work required of it, and, since it was desirable to have the two cable drives alike, both were rejected, and subsequently removed from the plant, by the general contractor. Whether this failure was due to imperfections in the cable drive itself, or whether, as claimed by the respondent, the cable drive conformed to the contract, but was too small to do the work required, it is unnecessary to determine.  The plaintiff had agreed that 25 per cent. of the purchase price should not become due until the drives were accepted.  It did not appear but that the plaintiff was fully informed of what would be required of the cable drives; on the contrary, it did appear that one Wreaks, who obtained the contract for the plaintiff, knew what would be required, because he admitted that he saw the defendant's contract with Smith, the general contractor, and he would not deny that he had also seen Smith's contract with the United States government.

It is not even suggested that the defendant in procuring the contract made any misrepresentations whatever on the subject.  The contract itself is quite specific as to the cable drives.  It provides:

"Each cable drive to have a capacity of 40 horse power at a cable speed of 180 feet per minute.  Each cable drive to be directly connected to and driven by a double vertical engine, which will be two simple vertical engines mounted on one base plate and coupled to one shaft running at a speed not greater than 180 revolutions per minute, having cranks set at quarters and connected with the cable drives by means of a square jaw clutch, so that the engine may be disconnected, permitting them to be turned over without operating the cable drive.  A governor to be provided with each double engine."

No attempt was made by the plaintiff to show that the cable drives installed by it complied in any respect with the terms of the agreement.  This, it seems to me, prevented a recovery by the plaintiff, and especially so when considered in connection with the provision of the agreement which permitted the defendant to retain 25 per cent. of the contract price.  It is of no importance whether the action be considered as one to recover damages for the breach of a contract, or on quantum meruit, because, when the written contract was put in evidence, that fixed and determined the rights of the parties.  Therefore the complaint, as the case stood at close of the trial, should have been dismissed.

I am also of the opinion the court erred in charging the jury, at plaintiff's request, that:

"If the defendant, by its act in specifying the 9 by 9 engine, made it impossible for the cable drivers with such engine to ever be accepted by the United States government and by the contractor, he thus by his own acts made the condition as to acceptance impossible of performance, and is estopped from insisting upon any such condition."

There was no contract at all until after the 9 by 9 engine had been specified, and if it be true that acceptance by the government and con-

tractor of an engine of that size was practically impossible, then the plaintiff ought never to have consented to the provision which made the payment of 25 per cent. of the purchase price depend upon such acceptance. It deliberately entered into the contract. It knew what would be required. It was not deceived or misled in any respect, and if a mistake was made as to the size of the engine, then it was as much its fault as that of the defendant, and this furnishes no reason why plaintiff should be relieved from a contract deliberately made.

The judgment and order appealed from, therefore, are reversed, and a new trial ordered, with costs to appellant to abide event. All concur.